UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARRIE A. BACOM, | No. 2:12-cv-00790 AC |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act ("the Act"), and Supplemental Security Income ("SSI") under Title XVI of the Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, the court will deny defendant's motion for summary judgment and will grant plaintiff's motion for summary judgment in part.

PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB and SSI on January 27, 2009, alleging disability beginning January 15, 2005. Administrative Record ("AR") 126-35. Both applications were denied initially on April 16, 2009, and again upon reconsideration on September 21, 2009. AR 62-70, 76-80. On July 20, 2010, a hearing was held before administrative law judge ("ALJ")

1

Philip E. Callis. AR 34-58. Plaintiff appeared with attorney representation at the hearing, at which she and a vocational expert ("VE") testified. AR 39-57. In a decision dated October 21, 2010, the ALJ determined that plaintiff was not disabled under sections 216(i), 223(d) of the Act. as to her DIB claim and not disabled under section 1614(a)(3)(A) of the Act as to her SSI claim.[1] AR 19-29. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2008.
>
> 2. The claimant has not engaged in substantial gainful activity since January 15, 2005, the alleged onset date.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq. This requires determination of whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

3. The claimant has the following severe impairments: asthma, chronic back pain, obstructive sleep apnea, and hypertension.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a). The claimant is confined to a wheelchair, although she can occasionally get up and down, but not more than a couple of minutes at a time, and not more than an hour total during an eight-hour work day with normal breaks. In addition, the claimant has postural limitations that preclude her from more than occasionally climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling; and she should never climb ladders, ropes or scaffolds. Furthermore, she should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.

6. The claimant is unable to perform past relevant work

7. The claimant was born on March 10, 1978 and was 26 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework support a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 15, 2005, through the date of this decision.

AR 21-29.

Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Council denied review on February 17, 2012, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1-3.

////

////

FACTUAL BACKGROUND

Born on March 10, 1978, plaintiff was 26 years old on the alleged onset date of disability, AR 126, and 32 years old at the time of the administrative hearing, see AR 39. Plaintiff is a high school graduate. AR 157. She last worked as a bus driver between 2001 and 2005. AR 152. Plaintiff lost her driver's license in 2005 due to her failure to pay a fine and was fired from her job. AR 47. She divorced in 2005 and currently lives with her two children, who were ten and four at the time of the administrative hearing in July 2010. AR 48, 129. Plaintiff alleges disability beginning on January 15, 2005. AR 126.

LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir.2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec' y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir.1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.1985).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir.2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## ANALYSIS

Plaintiff argues that the ALJ erred by (a) improperly finding at the third step of the sequential evaluation process that plaintiff's condition did not equal Listing 1.02 due to her extreme obesity and inability to ambulate effectively, and failing to articulate sufficient reasons for this finding, (b) failing to incorporate some of plaintiffs limitations in the residual functional capacity ("RFC") finding, and (c) failing to obtain vocational expert ("VE") testimony regarding the number of jobs available in the national economy for a claimant with plaintiff's RFC. Pl.'s Mot. for Summ. J., ECF No. 14.

A.   Listing 1.02

   1.   Background

An ALJ determines whether a person's condition either "meets" or "equals" a listing at the third step of the disability analysis. The "Listing of Impairments" ("Listings") lists impairments to different categories of body systems which are severe enough to preclude any gainful activity. Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). When all the requirements of a listing are met, the described condition is irrebuttably presumed

disabling. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985); 20 C.F.R. § 404.1520(d). However, a mere diagnosis of a listed impairment is not sufficient. Specific findings included in each listing also must be met. See, e.g., Key, 754 F.2d at 1550 (9th Cir. 1985). Alternatively, other diagnostic tests, or the combined effects of various conditions, may demonstrate the "equivalent" of the specific required findings. See, e.g., Sullivan v. Zebley, 493 U.S. 521, 531 (1990); Marcia v. Sullivan, 900 F.2d 172 (1990). In sum, unless an impairment is as severe as and has lasted as long as described in the listing, a person is not presumptively disabled. Young, 911 F.2d at 183.

Since 1999, obesity is no longer a listed impairment. See Revised Medical Criteria for Determination of a Disability, Endocrine System and Related Criteria, 64 F.R. 46122-01 (effective October 25, 1999) (former Listing 9.09, "Obesity," was removed from Appendix 1, Subpart P of Part 404, the Listing of Impairments).[2] Although obesity is not a listed impairment, an ALJ must consider the effect of a claimant's obesity upon her other impairments and ability to work. Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003); see also Social Security Ruling ("SSR") 02–01p (stating that obesity is a medically determinable impairment and requiring an ALJ to consider the effects of obesity in the five-step sequential evaluation). An ALJ must "evaluate each case based on the information in the case record," as obesity may or may not increase the severity of, or functional limitations associated with, other impairments. SSR 02–01p. The guidance for evaluating claims for benefits involving obesity can be found in the prefaces to the musculoskeletal, respiratory, and cardiovascular body system listings, the most at-risk systems in cases of obesity. Revised Medical Criteria for Determination of Disability, Endocrine System and Related Criteria, 64 FR 46122-01. Obesity still can be a factor in both "meets" and 'equals" determinations for these listings, and may be found to meet or equal a Listing either by itself or in combination of several impairments. SSR 02–01p.

---

[2] According to the Social Security Administration "the criteria in listing 9.09 were not appropriate indicators of listing-level severity because they did not represent a degree of functional limitation that would prevent an individual from engaging in any gainful activity." Revised Medical Criteria for Determination of Disability, Endocrine System and Related Criteria, 64 FR 46122-01.

6

In the present case plaintiff argues that due to her morbid obesity and inability to ambulate effectively, her condition equals the impairment set forth in Listing 1.02, "Major dysfunction of a joint(s) (due to any cause)." This Listing is "[c]haracterized by [1.] gross anatomical deformity (*e.g.,* subluxation, contracture, bony or fibrous ankylosis, instability) [,][2.] chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and [3.] findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s) [,][w]ith . . . . [4.][i]nvolvement of one major peripheral weight-bearing joint (*i.e.,* hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in [section] 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.02.

Although plaintiff does not have a dysfunction of major peripheral weight-bearing joint, she claims that her condition equals Listing 1.02 in accordance with SSR 02-1p because of the relationship between her extreme obesity and her inability to ambulate effectively. Pl.'s Mot. for Summ. J., ECF No. 14. SSR 02-01p provides that "[i]f the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b . . . of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A." SSR 02–01p. In order to meet or equal Listing 1.02, plaintiff must show that her obesity resulted in loss of ability "to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment, or the inability to perform fine and gross movements effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment." 20 C.F.R. Pt. 404 App. 1, 1.00B2b.

Section 1.00B2b provides the following description of what the Administration means by inability to ambulate effectively:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.,* an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

7

>    (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Id.[3]

The record in this case shows that plaintiff suffers from morbid obesity, weighing 430 pounds and standing 5'8" tall. AR 22. Her recorded BMI was 65.4 at the time of the hearing.[4] Id. This level of BMI represents Level III obesity, termed "extreme" obesity which, according to SSR 02-01p, represents the greatest risk for developing obesity-related impairments. Id. Yet SSR 02-01p cautions that while the levels describe the extent of obesity, they do not correlate with any specific degree of functional loss. It is the plaintiff's burden to establish whether the obesity in fact resulted in such a level of functional loss that it can equal a Listing or otherwise warrant finding of disability. Id.

The ALJ considered plaintiff's obesity in the five-step sequential evaluation. AR 21-29.

---

[3] The Administration has further clarified that use of an assistive device(s) limiting functioning of both of a claimant's upper extremities is sufficient, but not necessary, to establish an inability to ambulate effectively according to paragraphs 1 and 2 of section 1.00B2b. Specifically, the Administration has explained, "We do not want to say that a claimant needs two hand-held assistive devices in order to exhibit inability to ambulate effectively . . . . The definition requires only that the claimant not be able to ambulate effectively and that effective ambulation would not occur if the only way an individual could get around would be with an assistive device that requires use of both upper extremities." 66 Fed. Reg. 58010, at 58027 (Nov. 19, 2001). The Administration has further asserted that "[t]he criteria [under 1.00B2b] do not require an individual to use an assistive device of any kind[,]" the "explanation[s] and examples should make it clear that [the section] applies to anyone who cannot walk adequately[,]" and "we recognize that individuals with extreme inability to ambulate do not necessarily use assistive devices." Id. 58027.

[4] "The Clinical Guidelines recognize three levels of obesity. Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III . . . . includes BMIs greater than or equal to 40." SSR 02–01p.

1    At step two of the analysis, the ALJ determined that plaintiff had severe impairments including
2    asthma, chronic back pain, obstructive sleep apnea, and hypertension. AR 21. He further stated
3    that "[i]n addition to her impairments, the claimant suffers from morbid obesity, which imposes
4    more than a minimal restriction on her ability to perform routine work and, thus, is a severe
5    impairment." AR 21-22. At step three, however, the ALJ found that plaintiff's impairments did
6    not meet or equal any Listing, specifically referencing Listing 1.02. AR 23. Finally, after
7    considering the entire record, the ALJ assessed the RFC, finding that plaintiff can perform less
8    than the full range of sedentary work as defined in 20 CFR 404.1567(a). AR 23-27. In addition,
9    the ALJ stated that "the claimant is confined to a wheelchair, although she can occasionally get
10   up and down, but not more than a couple of minutes at a time, and not more than an hour total
11   during an eight-hour work day with normal breaks." AR 23.

12          2.      Discussion

13          Plaintiff claims that the ALJ erroneously failed to find that her extreme obesity and
14   inability to ambulate effectively equaled Listing 1.02, in violation of SSR 02–1p. Pl.'s Mot. for
15   Summ. J., ECF No. 14. Defendant, on the other hand, argues that the ALJ did not err because
16   plaintiff did not meet her burden to produce the requisite objective medical evidence showing that
17   she meets or equals the Listing, and that she cannot prove her inability to ambulate effectively
18   within the meaning of Listing 1.02. Def.'s Cross-Mot. for Summ. J., ECF No. 18.

19          Plaintiff argues first that she did meet her burden, as evidenced by the ALJ's finding at
20   step four of the sequential evaluation process that plaintiff was "confined to a wheelchair."
21   Plaintiff contends that the ALJ's finding that she is "confined to a wheelchair" constitutes a *per se*
22   conclusion that she cannot ambulate effectively within the meaning of Section 1.00B2b, and that
23   the ALJ therefore should have found that her condition equals Listing 1.02.  The court finds this
24   argument unpersuasive. Although the ALJ stated in the RFC assessment that plaintiff is
25   "confined to a wheelchair," it does not automatically follow that wheelchair use resulted from
26   plaintiff's obesity, or that the limitation of her ambulation is at the level required by Section
27   1.00B2b, or that plaintiff met her burden to present sufficient objective medical evidence
28   supporting equivalence of her condition to Listing 1.02. Accordingly, the reference to plaintiff's

wheelchair use does not, standing alone, compel a finding of inability to ambulate effectively or Listing 1.02 equivalence.

The record does contain multiple medical reports indicating that plaintiff is morbidly obese, with her weight progressively increasing from 350 pounds in 2004 to 430 pounds in 2008. AR 227-47.  The record also contains evidence indicating both that plaintiff has a decreased ability to ambulate effectively and that her extreme obesity has exacerbated her current difficulties with breathing and chronic back pain, which restrict her ability to ambulate.  For example, Dr. Li Nanying of Lodi Memorial Hospital noted that weight reduction would be critical for plaintiff's lung issues.  AR 292.  Dr. Jonathan Schwartz, a state agency examining physician, found that due to morbid obesity and shortness of breath, plaintiff retained the maximum capacity to stand and walk up to two hours and sit up to six hours.  AR 267.  Dr. Schwartz also found that plaintiff's condition would impose limitations for twelve continuous months if plaintiff did not lose significant amount of weight.  Id.  During the administrative hearing, plaintiff testified that she is experiences constant back pain, which gets worse from standing or walking, and that this pain and her shortness of breath make it difficult for her to walk.  AR 40-41.  Plaintiff stated that she uses "a wheelchair or a rolling desk to get around," or a riding cart when she goes shopping. AR 165, 181.  The wheelchair was prescribed by her treating physician, Dr. Denise Nguyen.  AR 251.  The examining physician Dr. Schwartz found that this was warranted "for long distances and all terrain."  AR 267.  Plaintiff also testified that she can only stand for a couple of minutes and walk about 30 feet.  AR 45, 264.

On the other hand, the record also includes evidence that the functional impact of plaintiff's obesity is not as severe as she asserts.  For example, as defendant points out, the medical record states that the wheelchair was needed only for "longer distances."  Id. Additionally, Dr. Schwartz's objective examination findings indicate that plaintiff had normal range of motion in her ankles, knees and hips, and she had normal coordination and gait.  AR 265-66.  Plaintiff's attending physician advised her to exercise daily, AR 298. which indicates that she was capable of daily exercise.  Plaintiff also can climb five long steep stairs every time

1 she needs to get into her mobile home. AR 165. She also stated earlier that she could probably
2 walk about a block. AR 163.

3 The ALJ did not comprehensively evaluate and analyze this evidence at the third step of
4 the sequential evaluation process. To make a proper step-three finding, an ALJ must evaluate the
5 relevant evidence before concluding that a claimant's impairments do not meet or equal a listed
6 impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's
7 impairment does not do so. Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001) (citing Marcia v.
8 Sullivan, 900 F.2d 172, 176 (9th Cir. 1990)) (holding that ALJ erred by failing to consider
9 evidence of equivalence). "The regulations . . . . require the Secretary to review the symptoms,
10 and make specific findings essential to the conclusion . . . . [The ALJ's] findings should be as
11 comprehensive and analytical as feasible and, where appropriate, should include a statement of
12 subordinate factual foundations on which the ultimate factual conclusions are based, so that a
13 reviewing court may know the basis for the decision." Gonzalez v. Sullivan, 914 F.2d 1197, 1200
14 (9th Cir. 1990) (quotations and citations omitted); see 20 C.F.R. §§ 404.1526(c), 416.926(c)
15 ("When we determine if your impairment medically equals a listing, we consider all evidence in
16 your case record about your impairment(s) and its effects on you that is relevant to this finding.").

17 Here the ALJ did not provide any explanations in support of his finding that plaintiff's
18 impairment did not equal Listing 1.02, other than noting that "in reaching this conclusion . . . .
19 [he] considered the opinions of both the State Agency medical consultants who evaluated this
20 issue at the initial and reconsideration levels of the administrative review process, and determined
21 their opinions sound." AR 23. These findings are very cursory and do not sufficiently explain
22 the ALJ's reasoning. At step two and step four of his analysis the ALJ summarized some of the
23 medical evidence pertaining to plaintiff's obesity and ability to ambulate. See AR 21-27. For
24 example, he noted Dr. Schwartz's conclusion that plaintiff was morbidly obese and that she had
25 "shortness of breath, likely secondary to history of asthma, as well as morbid obesity; and back
26 pain, possibly secondary to degenerative disc disease, as well as muscle strain from morbid
27 obesity." AR 26. The ALJ also noted Dr. Schwartz's finding that plaintiff's "postural limitations
28 [were] necessary due to her morbid obesity and her decreased range of motion in her lumbar

spine," as well as his observation that plaintiff used a wheelchair to get from her vehicle to the waiting room, was able to walk into the examination room, and "was able to sit comfortably, although she had some difficulty transferring from her chair to the examination table." Id. Further, the ALJ found plaintiff not fully credible. AR 27. However, the ALJ did not evaluate the evidence pertaining to plaintiff's increase in weight and its relation to her pulmonary and back pain problems, limiting her ability to ambulate. He did not discuss why plaintiff was prescribed her wheelchair and whether she can get around without it or other assistive devices in her daily activities. Most importantly, he did not say how this evidence and plaintiff's wheelchair use impacted his step-three finding.

Defendant contends that plaintiff did not present to the ALJ any theory as to how her condition equals Listing 1.02. Def.'s Cross-Mot. for Summ. J., ECF No. 18. Citing Lewis v. Apfel, 236 F.2d 503, 514 (9th Cir. 2001), defendant argues that plaintiff did not satisfy her burden of proving that she equals a listing because she "offered no theory, plausible or otherwise," to the ALJ, nor "pointed to evidence that shows that [her] combined impairments equal a listed impairment." Id. Defendant also cites Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) stating that an ALJ "is not required to ... compare [a claimant's impairments] to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Id. In her moving papers and in her reply to defendant's motion for summary judgment, plaintiff contends that she did not explicitly argue the applicability of Listing 1.02 to her case before the ALJ, but argues that "[t]here is no regulatory requirement that the claimant *recite* the applicable listings to the ALJ." Pl.'s Reply to Def.'s Cross-Mot. for Summ. J., ECF No. 20.

The court agrees that where a claimant has not presented any theory of how an impairment meets or equals a particular Listing, an extensive discussion of the Listing is not required. See Burch, 400 F.3d at 683 (9th Cir. 2005); Lewis, 236 F.3d at 514 (9th Cir. 2001). It is the plaintiff's obligation to establish a connection between a Listing and her excessive weight, impairments, and any relevant functional limitations. See Burch, 400 F.3d at 683 (9th Cir. 2005).

However, the court notes that neither party refers to or even acknowledges the existence

of a July 20, 2010 brief plaintiff submitted to the ALJ arguing the precise issue she is arguing here – namely, that her morbid obesity resulted in her inability to ambulate effectively and that, therefore, her condition equals Listing 1.02. The brief reads:

> Ms. Bacom equals listing 1.02A because of her extreme obesity. Her height is 5'8, and she has a BMI over 40 since at least 2004 . . . . Although we are waiting for Claimant's current medical records from her treating physician, she reports her last recorded weight was 430 lbs, which at 5'8 yields a BMI of 65.4. Under SSR 02-1p, obesity by itself may medically equal a listed impairment. "For example, if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A . . . . Here, Ms. Bacom was prescribed a wheelchair for ambulation by her treating physician Dr. Nguyen (record pending). Ms. Bacom is also expected to testify that she uses her wheelchair regularly and requires it for walking more that very short distances. This is corroborated by the Internal Medical CE at 6, who said, "[t]he claimant uses a wheelchair which is medically necessary based on my objective exam findings. The assistive device is necessary for long distances and all terrain" (6F/5). SSR 02-1p states that obesity can cause limitations in "any of the exertional functions" including standing and walking. Ms. Bacom's need for a wheelchair clearly indicates she does have limitations in standing and walking.

AR 207-08.

The court finds this language adequate to put the ALJ on notice as to the connection between Listing 1-02 and plaintiff's impairments and functional limitations. This defeats defendant's argument that plaintiff failed to present the ALJ with a theory as to how her condition equals Listing 1.02. Plaintiff clearly presented such a theory to the ALJ and he was required to discuss the listing, adequately consider plaintiff's assertions and evidence in the record, and provide a rationale for his findings.

The court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Since the ALJ did not expressly discuss all of the relevant evidence concerning plaintiff's obesity and resulting limitations, or provide any analysis of how her impairment and functional limitations compare to the requirements of Listing 1.02 (including inability to ambulate effectively), the record is inadequate for this court to determine whether the ALJ's decision was based on substantial

evidence.  As it appears from the record that plaintiff might meet at least some of the Listing 1.02 requirements, the court finds remand necessary for the ALJ to properly consider whether plaintiff should be found disabled at step three of the sequential analysis.  See Dobson v. Astrue, 267 Fed. Appx. 610, 612 (9th Cir. 2008) (remanding ALJ's finding that the plaintiff did not meet Listing 1.02 where the ALJ failed to analyze whether the plaintiff could (with or without a cane) ambulate effectively according to the factors set forth in section 1.00B2b) (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3).  Determination of whether plaintiff's condition equals a listing goes to the heart of disability determination.  Thus, the ALJ's failure to consider all evidence and provide rationale for his finding that plaintiff's condition did not equal a Listing is not a harmless error.

B.    Remaining Grounds for Relief

Plaintiff's remaining arguments focus on the ALJ's RFC assessment and his alleged failure to VE testimony regarding the number of jobs available in the national economy for a claimant with plaintiff's RFC.  Because these matters may ultimately be mooted based on the ALJ's analysis at the third step of the sequential evaluation process, the court declines to proceed further with its analysis at this time.

REMAND IS REQUIRED

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion.  Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  Id. at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").  However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  Id.

////

////

Here, remand is the appropriate remedy to allow the ALJ the opportunity to properly evaluate whether plaintiff's condition is equivalent to Listing 1.02.  See Stout v. Comm'r, 454 F.3d 1050, 1056-57 (9th Cir. 2006).

## CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiff's October 27, 2012 motion for summary judgment is granted;
2. The Commissioner's December 27, 2012 cross-motion for summary judgment is denied; and
3. This case is remanded for further proceedings consistent with this Order.

DATED: September 25, 2013

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

/ew;baco0790.ss